IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ROBERT R. DORR,

                    Petitioner,

        vs.


EARL L. HOUSER, Superintendent,
Goose Creek Correctional Center,

                    Respondent.

No. 3:18-cv-00039-JKS

MEMORANDUM DECISION

        Robert R. Dorr, a state prisoner now represented by counsel, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Dorr is in the custody of the

Alaska Department of Corrections and incarcerated at Goose Creek Correctional Center.

Briefing is now complete, and the case is before the undersigned judge for adjudication.

## I. BACKGROUND/PRIOR PROCEEDINGS

        On June 27, 2003, Dorr was charged with first-degree murder, extreme indifference

second-degree murder, kidnapping, two counts of first-degree sexual assault, and one count of

second-degree misconduct involving weapons after he shot his wife, Gail Dorr, several times

with a handgun, leading to her death. Dorr also shot himself twice in the head, but he survived.

On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts

underlying the charges against Dorr and the evidence presented at trial:

The Dorrs married in 1998, but Gail told Dorr in August 2002 that she wanted a divorce. Dorr suspected that Gail was having an affair, but Gail denied it. After Gail moved out the next month, Dorr hired a private investigator, Walter Compton, to spy on Gail to see if she had a lover.

Compton videotaped a man heading toward Gail's new apartment. The video convinced Dorr that something was going on, and Dorr decided that Gail had falsely denied an affair. On October 11th, Dorr bought a .38 caliber handgun.

On October 12th, Dorr staked out Gail's home. He saw a man arrive in a truck and enter Gail's apartment. Dorr recorded the truck's license plate number and gave the information to Compton, who identified the driver for Dorr.

Dorr called the man's wife and told her what he had observed. The man called Dorr and confirmed Dorr's suspicions that he was Gail's lover.

Before 5:00 a.m. on October 28th, Dorr arrived at Gail's residence with his handgun. Gail called her office and spoke with Barbara Pelletier, a co-worker, telling her she wanted to speak with Kevin Scott, Gail's supervisor. She told Pelletier that someone was banging on her door and would not go away. Pelletier thought that Gail sounded "very shaky, very distraught and upset, panicked," but Pelletier could not locate Scott.

Gail called back a few minutes later and spoke with Scott, telling him that she was sick and would not come into work. Scott felt that something was wrong because of Gail's tone of voice, so he asked her if Dorr was there. Gail answered that he was and ended the conversation abruptly.

Dorr and Gail left Gail's apartment with Gail driving her truck and headed towards Dorr's house. As they passed by a gas station/convenience store, Gail suddenly turned into the parking lot, jumped from the moving truck, and ran toward the store's front door. Dorr fired several shots at Gail, hitting her twice in the back and once in the head, killing her. Dorr then shot himself twice in the head, but neither wound was fatal. Dorr was hospitalized and underwent surgery for his wounds.

On the following day and fifteen hours after surgery, the police interviewed Dorr at the hospital when Dorr was medicated. The police returned the next day, October 30, and interviewed Dorr twice more.

Dorr moved to suppress the statements he gave to the police while in the hospital. Superior Court Judge Larry D. Card granted the motion in part, suppressing the portion of the second October 30 interview that continued after Dorr "broke off questioning indicating he had spoken to his attorney and the attorney told him not to say anything else." Judge Card rejected Dorr's argument that his admissions were involuntary.

During the trial, Judge Card granted Dorr's request that the jury be instructed on the heat-of-passion defense with respect to the charge of second-degree murder. The State petitioned this Court for review and we granted the petition in part. We instructed the superior court to use verdict forms that would require the jury to specify if the jury agreed that the State failed to disprove Dorr's heat-of-passion defense, and if so, to which murder charge (first-or second-degree) this defense applied. The superior court submitted verdict forms to the jury that complied with this Court's order.

*Dorr v. State*, No. A-9178, 2007 WL 4125145, at *1-2 (Alaska Ct. App. Nov. 21, 2007).

At the conclusion of trial, the jury convicted Dorr of all counts except the two counts of first-degree sexual assault, which were dismissed after the jury was unable to reach a verdict. The court merged the convictions for first- and second-degree murder and imposed 99 years' imprisonment for murder. The court also imposed a concurrent term of 99 years for kidnapping

-2-

and 4 years for second-degree weapons misconduct.

Through counsel, Dorr appealed his conviction, arguing that: 1) the trial court erred in finding voluntary statements elicited from Dorr during questioning at the hospital hours after surgery; 2) the Court of Appeals ordered the trial court to use erroneous special verdict forms; 3) the trial court erred in denying Dorr's motion for acquittal on the kidnapping count; and 4) the 99-year sentence imposed on the kidnapping count is excessive, in the event the murder conviction is vacated. The Court of Appeals unanimously affirmed the judgment against Dorr in a reasoned, unpublished opinion issued on November 21, 2007. Dorr filed a counseled petition for hearing in the Alaska Supreme Court, which was denied without comment on March 19, 2008.

Roughly four months later, Dorr filed in the Alaska Superior Court a counseled application for post-conviction relief alleging that his trial counsel had provided ineffective assistance. In particular, Dorr alleged that counsel did not adequately prepare him for cross-examination and did not conduct a redirect examination. In response to Dorr's claims, trial counsel provided an affidavit stating that there had been "extensive" preparation for Dorr's trial testimony, but that it was clear that Dorr "was going to have his say" from the witness stand "whether it fit the hours of prep [Dorr and counsel] had done on heat of passion or not." Counsel agreed that Dorr had performed poorly on cross-examination and that his testimony undermined the heat of passion defense. Counsel asserted that, given Dorr's poor performance, he made the strategic decision not to conduct a redirect examination for fear of continuing Dorr's testimony and risk obtaining the heat of passion instruction, which had been heavily contested by the State.

On October 2, 2014, the superior court held an evidentiary hearing on the post-conviction relief motion at which Dorr testified as to his version of events. The court found Dorr's testimony "fuzzy" and "internally inconsistent, self-contradictory, and incredible." The court further found that "Dorr's poor performance under tough questioning on cross-examination appears to largely be attributable to his having disregarded his attorney's advice, as opposed to

being attributable to not being adequately prepared." The superior court thus determined that counsel's decision not to conduct redirect was reasonable under the circumstances and a "sound tactical decision," and denied the application for post-conviction relief. Dorr appealed, and the Alaska Court of Appeals affirmed. *Dorr v. State*, No. A-12291, 2017 WL 5040683, at *1 (Alaska Ct. App. Nov. 1, 2017). The Alaska Supreme Court denied his petition for hearing without comment on January 29, 2018.

Dorr then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on February 5, 2018. Docket No. 1. His accompanying request for appointed counsel was granted, and an Amended Petition (Docket No. 15 "Petition") was subsequently filed.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Dorr argues, as he did on direct appeal, that statements he made to law enforcement while hospitalized for gunshot injuries to his head were involuntary and thus wrongfully admitted in violation of due process.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Dorr argues that statements he made to law enforcement while at the hospital post-head surgery were involuntary and thus wrongfully admitted at trial.[1] In considering this claim on

---

[1]     Notably, Dorr does not argue in his Petition, and did not argue on direct appeal, that he was in police custody during the questioning and thus should have been given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436, 469-70 (1966) (defining custodial interrogation as

direct appeal, the Alaska Court of Appeals laid out the following factual background:

> Detectives Joseph Hoffbeck and Timothy Landeis contacted Dorr in the hospital on October 29th and again on October 30th. The first interview took place approximately fifteen hours after Dorr had come out of surgery, and Dorr had received several drugs during his treatment. Portions of Dorr's statements to the police were used against him at trial. Dorr moved to suppress the statements, arguing that they were not voluntary.
>
> During the evidentiary hearing on the motion to suppress, Dorr called Dr. George Woods as an expert witness in the area of forensic neuropsychiatry and pharmacology. Dr. Woods opined that Dorr was suffering from acute delirium when he was questioned by Detectives Hoffbeck and Landeis. He explained that "delirium is a waxing and waning of consciousness that . . . can be caused by medications, . . . a lack of oxygen, [or] by trauma, head trauma particularly. [It] allows a person to have impairments of memory [and] orientation, [and] to often have disturbances in language." Dr. Woods concluded that Dorr "was extremely more vulnerable to police questioning," that Dorr's "capacity for self-determination had been critically impaired," and that Dorr's statements "were not essentially free and unconstrained by his choice."
>
> Dr. Woods noted that Dorr had experienced "significant surgical interventions" in the twenty-four hours prior to the interrogation, and that Dorr had been under anesthesia. Dorr had also received doses of several drugs that "can alter one's mental state." Dr. Woods explained that these drugs "were designed not only to control pain, but [also] to induce [an] anesthetic coma which . . . would be designed to impair memory."
>
> Dr. Woods gave specific examples from the interrogation that he believed demonstrated the neurological phenomena of delirium. Dr. Woods suggested that Dorr exhibited signs of non-responsiveness, an inability to sequence, an impaired consciousness, echolalia (where a person repeats a specific word or phrase), disorientation, memory impairment, a breakdown in the ability to retain information, impaired processing of information, slurred speech, and suggestibility. The doctor concluded that the delirium would impair Dorr's ability to make voluntary statements.
>
> Judge Card found that "Dorr was heavily medicated before, during, and after any statements made." But Judge Card listened to a recording of the interview and found that "there was no indication that he was not lucid, alert as to time and space, and aware that he was talking to police officers." Judge Card rejected Dorr's contention that Dorr was incapable of giving a voluntary statement. He denied the motion, finding that the "statements were voluntary, that the police were not overreaching, and that [Dorr's] responses were both coherent and rational."

*Dorr*, 2007 WL 4125145, at *2-3.

It is well-established that due process prohibits the use of a coerced, involuntary confession to secure a defendant's conviction. *Dickerson v. United States*, 530 U.S. 428, 433 (2000) (noting that such evidence is "inherently untrustworthy"). Importantly, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the

---

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way").

meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "Police interrogation tactics that do not rise to the level of coercion do not make a confession involuntary." *Thompson v. Runnels*, 705 F.3d 1089, 1097 (9th Cir. 2013).

Coercive police conduct may be the result of either physical intimidation or psychological pressure. *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960). The test for determining whether a confession is involuntary is "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession[,]" taking into consideration "'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Dickerson*, 530 U.S. at 434. "The characteristics of the accused can include the suspect's age, education, and intelligence, as well as a suspect's prior experience with law enforcement[.]" *Yarborough v. Alvarado*, 541 U.S. 652, 667-68 (2004) (citations omitted). The details of the interrogation include its length and location, and whether the suspect was advised of his *Miranda* rights. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993) (citations omitted); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). "Courts must 'weigh, rather than simply list,' the relevant circumstances, and weigh them not in the abstract but 'against the power of resistance of the person confessing.'" *United States v. Preston*, 751 F.3d 1008, 1017 (9th Cir. 2014) (en banc) (quoting *Doody v. Ryan*, 649 F.3d 986, 1015-16 (9th Cir. 2011) (en banc)); *see also Dickerson*, 530 U.S. at 434 ("The [voluntariness] determination 'depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" (citation omitted)).

Dorr challenges the voluntariness of his statements to police based on his physical and mental condition at the time of questioning. Dorr avers:

> Here, Dorr was suffering from a head injury that required intense surgical intervention less than 15 hours prior. His weakened physical condition was exacerbated by the administration of both anesthetics and an assortment of mind-altering psychoactive substances. The defense expert witness's unrebutted testimony established that when these substances are taken in combination, they will impair a person's memory, as well as their ability to retain information, and will make the subject susceptible to suggestion.

The Court first notes that there is no authority of the U.S. Supreme Court that requires a finding that Dorr's statements were *per se* involuntary under the circumstances. Rather, the Court of Appeals looked to the totality of the circumstances in this case before affirming the trial court's findings that "Dorr's statements were voluntary, that the police were not overreaching, and that [Dorr's] responses were both coherent and rational." *Dorr*, 2007 WL 4125145, at *6. In reaching that conclusion, the Court of Appeals reasoned that, although Dorr was medicated during the interview, he was responsive and forthcoming with officers, and there was no indication that the detective attempted to trick Dorr or that he did not understand their questions. *Id.* at *7.

In his Petition, Dorr specifically challenges the state courts' finding that law enforcement did not act coercively in obtaining his statements. According to Dorr, "[t]he record establishes that law enforcement took advantage of his frail state," and therefore the Court of Appeals' determination is contrary to *Connelly* and *Mincey v. Arizona*, 437 U.S. 385 (1978). In *Mincy*, the defendant was shot and hospitalized following a police raid of his apartment that left an officer dead. While in the hospital, tubes were inserted into his throat and nose, a catheter was inserted into his bladder, and he received various medications. *Id.* at 396. Around 8:00pm the same day, a police detective interrogated him in the intensive care unit, where he was arrested, given *Miranda* warnings, and questioned about the shooting. *Id.* Because he could not speak with the tubes in his mouth, the defendant wrote answers on a piece of paper during questioning that continued almost until midnight, despite defendant's repeated requests to stop. *Id.* Defendant requested the assistance of counsel several times, complained of unbearable pain, and some of his written responses were incoherent and showed confusion and an inability to think clearly. *Id.* at 398-99. The defendant complained several times that he was confused but the detective stopped questioning only when the defendant lost consciousness or received medical treatment. *Id.* at 400-01. The U.S. Supreme Court held that the defendant's will was overborne because he was barely conscious, weakened by pain and shock, and isolated from friends, family and

counsel.  *Id.*  Accordingly, his statements were deemed involuntary, and his statements were inadmissible against him at trial.  *Id.* at 401-02.

Although the circumstances of this case certainly give the Court pause, the state court's legal conclusion about the use of the incriminating statements is a straightforward application of clearly-established federal law, and Dorr has not shown otherwise.  The Court of Appeals thoroughly addressed the U.S. Supreme Court's decision in *Mincey* before concluding that it did not apply in Dorr's case.  *Dorr*, 2007 WL 4125145, at *7.  Although it is no doubt true that Dorr was experiencing the effects of medication and suffering from his recent self-inflicted gunshot wound when he was interviewed, this Court cannot say that the state court's no-coercion finding was *unreasonable* based on the totality of the facts before it.  *See, e.g., United States v. George*, 987 F.2d 1428, 1430-31 (9th Cir. 1993) (defendant's statements to police were voluntary, even though defendant was in the hospital suffering from apparent drug overdose at time of interview); *United States v. Kelley*, 953 F.2d 562, 564-66 (9th Cir. 1992) (no police coercion, even though defendant told officers he was on the verge of heroin withdrawal, and he began suffering effects of withdrawal, at time of interview), *disapproved of on other grounds by United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997); *United States v. Lewis*, 833 F.2d 1380, 1384 (9th Cir. 1987) (holding statement voluntary despite fact that defendant had recently returned from surgery on her shoulder, was in pain and had recently received a general anesthetic).  Although the expert witness and nurse testimony lend credence to Dorr's argument that his statements should be deemed involuntary given his medical condition at the time, federal habeas relief is precluded as long as "fairminded jurists could disagree on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).

Moreover, the Court agrees with Respondent's contention that, even if the state courts' determination was error, any such error was harmless.  The admission of an involuntary confession is subject to harmless error analysis.  *Arizona v. Fulminante*, 499 U.S. 279, 295-96 (1991).  In accordance with this review, habeas relief is only available where the error had a

"substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008).[2] The Court has reviewed the recorded audiotapes and transcripts of the statements at issue. That review supports that the outcome in Dorr's trial would not have been different had the statements not been admitted in trial. Dorr did not dispute that he shot and killed his wife. His defense at trial was that the shooting was a spontaneous loss of self-control, which is consistent with the version of events he gave during the police interviews, in which he stated, "I'm not a bad guy . . . I got caught up in it," and "I had no intentions ever of hurting anybody." Dorr does not point to anything in his statements that might have contributed to his conviction; indeed, it appears that the statements are consistent with his testimony. Accordingly, Dorr is not entitled to relief in any event.

## V. CONCLUSION AND ORDER

Dorr is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court grants a Certificate of Appealability as to: 1) whether statements Dorr made to law enforcement while hospitalized for gunshot injuries to his head were involuntary and thus wrongfully admitted in violation of due process; and 2) if the admission was error, whether it was harmless. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his

---

[2]     The Supreme Court has clarified that *Brecht* incorporates the requirements of § 2254(d) (AEDPA). *See Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). Thus, if a state court has determined that a trial error was harmless, "a federal court may not award habeas relief under § 2254(d) unless *the harmlessness determination itself* was unreasonable." *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)) (emphasis in original). Because the Court of Appeals did not conduct a harmless error analysis of Dorr's involuntary statement claim, this Court conducts such review *de novo* here. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (issues not addressed by the state court are reviewed in *de novo* fashion).

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

      The Clerk of the Court is to enter judgment accordingly.

      Dated: May 28, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
